UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MUTUAL INSURANCE CO.,

    Plaintiff,

vs.

CONSOLIDATED ELECTRIC AND
TECHNOLOGY ASSOCIATES CORP.
and CONTI ELECTRIC, INC.,

    Defendants.
_____/

Civil Action No.
06-CV-10217-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SURREPLY BRIEF**

**and**

**ORDER GRANTING THE MOTION OF DEFENDANT
CONTI ELECTRIC, INC. FOR SUMMARY JUDGMENT**

    This matter is presently before the court on (1) plaintiff's motion for leave to file a surreply brief, and (2) the motion of defendant Conti Electric, Inc., for summary judgment. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide these motions without oral argument.

    Plaintiff Liberty Mutual Insurance Company ("Liberty") issued a performance bond to ensure the payment of fringe benefit contributions which defendant Consolidated Electric and Technology Associates ("Consolidated") was obligated to make pursuant to a collective bargaining agreement with a local union of the International Brotherhood of Electrical Workers. When Consolidated defaulted under the collective bargaining agreement, plaintiff paid $100,000 on the bond to the Electrical Workers' Insurance Fund. Plaintiff then commenced this suit against Consolidated (against which a default judgment has been entered) and Conti Electric, Inc. ("Conti").

The claims against Conti are for promissory estoppel and breach of contract. Plaintiff alleges that it issued the bond at Conti's oral request, based on Conti's promise to sign an indemnity agreement whereby Conti and Consolidated jointly would indemnify plaintiff for any liability or losses on the bond.

Conti seeks summary judgment on the grounds that plaintiff's claims are barred by the statute of frauds. Conti notes that plaintiff has failed to produced a writing, signed by Conti, by which Conti committed itself to reimburse plaintiff in the event it had to make good on the bond due to Consolidated's failure to make fringe benefit contributions. Conti points to the following provision of the Michigan statute of frauds:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> \* \* \*
>
> (b) A special promise to answer for the debt, default, or misdoing of another person.

M.C.L. § 566.132. In the present case, there is no writing committing Conti to answer for the debt, default, or misdoing of Consolidated. Rather, plaintiff relies on the following documents which are attached to the complaint as exhibits: (A) a General Agreement of Indemnity, dated June 11, 1999, and signed by Conti and Indicon Corp. ("Indicon"), in which these corporations agreed to indemnify Liberty for losses it may incur on bonds it may issue on *their* behalf; (B) an identical *proposed* General Agreement of Indemnity, undated and unsigned, in which Conti, Indicon, and Consolidated are listed as principals; © an unsigned Performance Bond No. 13012269 dated April 1, 2002, identifying Consolidated as the employer and Liberty as the surety, in which Liberty purportedly

obligated itself to make certain fringe benefit contributions, up to $55,000, if Consolidated failed to do so; and (D) an unsigned Increase Rider dated September 17, 2002, purportedly increasing Liberty's potential liability under Bond No. 13012269 to $100,000.

Plaintiff acknowledges that there is no writing as required by the statute of frauds, but argues that the statute does not apply because (1) plaintiff issued the bond on the credit of Conti; (2) plaintiff partially performed under the oral agreement; and (3) the statute is trumped by promissory estoppel. The court addresses each of these arguments below.

In addition to the documents attached to the complaint, plaintiff also submits the affidavit of Thomas R. Guy, the president of the agency which issued the Consolidated bond on plaintiff's behalf. Guy avers that in "the Spring of 2002" his agency was contacted by Conti's chief financial officer, Joe Vanden Bossche, who requested that plaintiff issue a bond for Consolidated. According to Guy,

> 8. The Agency informed Mr. Vanden Bossche that Liberty would agree to issue bonds for Consolidated only if Conti Electric and its affiliated companies executed an Indemnity Agreement that would cover such bonds.
>
> 9. Mr. Vanden Bossche informed me that Conti Electric and the related companies would sign an Indemnity Agreement, and I thereafter drafted and forwarded to Mr. Vanden Bossche such an Indemnity Agreement.
>
> 10. Mr. Vanden Bossche marked up the Indemnity Agreement, indicating who would be signing the Agreement on behalf of Conti Electric and the other companies and returned it to my office for revision.[1]

---

[1]The "marked up agreement," a copy of which is attached to plaintiff's response brief as Exhibit C, has signature lines for representatives of Conti Electric, Inc., Indicon Corporation, Consolidated Electric & Technology Associates, Conti Properties, L.L.C., and three witnesses. It appears that Vanden Bossche was questioning who should be signing as witnesses, Indicon's

3

>       11. Based on the representation that Conti Electric and the other companies would be signing the Indemnity Agreement, Liberty, through the Agency, issued the Fringe Benefit Bond naming Consolidated as Principal.

In a letter dated October 8, 2004, plaintiff informed Conti that plaintiff had recently received a September 21, 2004, notice from the Electrical Workers Insurance Fund making a claim against plaintiff on the Consolidated bond. Plaintiff's request that Conti state its position on the matter resulted in Conti referring plaintiff to Consolidated's executive vice-president.

The cases cited by plaintiff do not support the proposition this case is taken out of the statute of frauds. *Hagadorn v. Stronach Lumber Co.*, 81 Mich. 56 (1890), which plaintiff cites for the proposition that the statute "would not apply to situations in which consideration is given entirely on the credit of the party asserting the statute of frauds," Pltf's Response Brief at 6, involved the sale of goods and is inapposite.

Nor is the court persuaded by plaintiff's suggestion that "Michigan Courts have held that partial performance takes a transaction out of the statute of frauds." Pltf's Response Brief at 6. Both of the cases cited for this proposition, *Brummel v. Brummel*, 363 Mich. 447 (1961), and *Hazime v. Martin Oil of Indiana, Inc.*, 792 F. Supp. 1067 (E.D. Mich. 1992), involved real estate transactions, not guarantees. In *Brummel*, the court enforced an oral contract to convey real property not only because plaintiff fully executed her obligation (namely, by building a house on the land in question), but also because the parties' agreement was evidenced by a note signed by defendants. *See* 363 Mich. at 449. In *Hazime*, in which plaintiff alleged that defendant breached an oral agreement to sell him a gas station, the court noted that "[p]artial performance of an oral contract

---

representative, and Consolidated's representative. As noted above, this document is not signed by anyone and it bears no date.

to convey an interest in land may remove the contract from the operation of the statute of frauds." 792 F. Supp. at 1070. The only case cited by the court in *Hazime* for this proposition is *Zaborski v. Kutyla*, 29 Mich. App. 604 (1971), which involved an alleged oral agreement to convey land. Plaintiff has cited no authority suggesting that the "partial performance" exception to the statute of frauds extends to other contexts. This court shall not undertake any such extension in the absence of solid Michigan case authority.

Finally, plaintiff argues that this case is taken outside the statute of frauds because plaintiff asserts a promissory estoppel claim. From the cases cited by both parties, it is clear that Michigan courts have struggled with the tension between the statute of frauds and promissory estoppel, the former being a legislative enactment that voids specified types of oral agreements, the latter being a judicially created doctrine that provides an equitable basis for circumventing the statute in some cases. The Michigan Court of Appeals has stated that promissory estoppel can override the statute of frauds when application of the statute would be "inequitable." *Lovely v. Dierkes*, 132 Mich. App. 485, 489 (1984). More recently, however, the same court has questioned whether promissory estoppel can *ever* override the statute of frauds. *See Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 548 n.4 (2000). In *Kelly-Stehney & Assocs., Inc. v. MacDonald's Indus. Prods., Inc.*, 254 Mich. App. 608 (2003), *vacated on other grounds and remanded*, *Kelly-Stehney & Assocs., Inc. v. MacDonald's Indus. Prods. Inc.*, 469 Mich. 1046 (2004), the Michigan Court of Appeals again "question[ed] the continued viability of utilizing a judicially created doctrine like estoppel to circumvent the plain language of the statute of frauds" and criticized Michigan courts for having "by judicial fiat created gaping holes in the statute of frauds that are inconsistent with the express language of the statute and the policy supporting it." 254 Mich. App. at 614 & n.4.

Unfortunately, although the Michigan Supreme Court heard an appeal in this case, it avoided deciding the issue.

For present purposes the court shall assume that, under the current state of the law in Michigan, a promissory estoppel claim is not necessarily barred by the absence of a writing that would otherwise be required by the statute of frauds. The court adopts the following statement of the law:

> The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced detrimental reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided. To be sufficient to support an estoppel, a promise must be definite and clear. Where a defense under a statute of frauds is raised, the rule is that one must have acted to his detriment solely in reliance on the oral agreement.

*Crest the Uniform Co., Inc. v. Foley*, 806 F. Supp. 164, 169 (E.D. Mich. 1992) (citations omitted).

Viewing the evidence in the light most favorable to the non-moving party, the court concludes that no reasonable fact-finder could find in plaintiff's favor as to the second or fourth elements, or as to the requirement that plaintiff must have acted "solely in reliance on the oral agreement." As noted above, plaintiff alleges that the promise in question was made sometime in "the Spring of 2002." The bond is dated April 1, 2002. Even if one assumes that it was reasonable for plaintiff, a large and sophisticated insurance company whose business includes issuing performance bonds,[2] to issue a bond in favor of Consolidated merely on Conti's oral promise to sign

---

[2]The court takes judicial notice of the following information about plaintiff from its website, http://www.libertymutual.com:

**Company Information**
Boston-based Liberty Mutual Group (LMG) is a leading global

an indemnity agreement, it was patently unreasonable for plaintiff to allow the bond to remain in place, when no signed indemnity agreement was forthcoming, for the next *two and one-half years*. Since plaintiff allowed such a long period of time to elapse after Conti failed to sign the indemnity agreement, no reasonable fact-finder could conclude that Conti reasonably could have expected plaintiff to act this way or that plaintiff acted solely in reliance on the oral promise. Commercially reasonable behavior would have involved prompt follow-up by plaintiff to ensure that Conti actually signed the indemnity agreement, as it allegedly had promised to do. This is not a case like *Crest* in which the promisor lulled the promisee into a false sense of security by repeatedly promising, over a period of years, to make good on certain debts and to sign a guarantee. Nor could any reasonable fact-finder conclude, under the circumstances of this case, that Conti's promise must be enforced to avoid injustice. As the court noted in *Indus. Maxifreight*, "[i]t is not unjust to require Plaintiff to comply with the statute of frauds. Plaintiff is a business, operated by two long-time business owners, represented by counsel . . . . Plaintiff could have reduced any alleged lease agreement to an enforceable writing in compliance with the statute of frauds. Nothing prevented Plaintiff from requiring a lease or letter of intent prior to proceeding . . . ." 182 F.Supp.2d at 636. Likewise,

> insurer and sixth largest property and casualty insurer in the U.S. whose largest line of business is private passenger automobile based on 2004 direct written premium. As of December 31, 2005, LMG had $78.8 billion in consolidated assets and $21.2 billion in annual consolidated revenue. The Company ranks 102nd on the Fortune 500 list of largest corporations in the United States based on 2005 revenue.
>
> LMG offers a wide range of insurance products and services, including personal automobile, homeowners, workers compensation, commercial multiple peril, commercial automobile, general liability, global specialty, group disability, assumed reinsurance, fire and surety.

7

nothing prevented Liberty from complying with the statute of frauds in this case. Liberty could and should have secured the executed indemnity agreement before issuing the Consolidated bond or, failing this, immediately thereafter. Instead, plaintiff issued the bond based on Conti's oral agreement, months later even *increased* the amount of the bond, never followed up to obtain an executed agreement, and sat on its hands for two and one-half years when a claim was finally made against the bond. Under such circumstances, there is no equitable basis for avoiding application of the statute of frauds. The oral agreement is therefore void and plaintiff's claims are defeated. Accordingly,

        IT IS ORDERED that plaintiff's motion for leave to file a surreply is granted.

        IT IS ORDERED that defendant Conti's motion for summary judgment is granted.

        \_\_\_\_\_s/Bernard A. Friedman_____
        BERNARD A. FRIEDMAN
        CHIEF UNITED STATES DISTRICT JUDE

Dated:   January 10, 2007
         Detroit, Michigan

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____
       Patricia Foster Hommel
      Secretary to Chief Judge Friedman**